In re TROY DODSON CONSTRUCTION
CO., INC., Debtor.

UNITED PACIFIC INSURANCE
CO. and Reliance Insurance
Co., Appellants,

v.

George McCLELLAND and Mehaffy,
Weber, Keith & Gonsoulin,
Appellees,

v.

MBANK BEAUMONT, Cross–Appellant.

No. 1:90–CV–0381.

United States District Court,
E.D. Texas,
Beaumont Division.

April 2, 1991.

John J. Durkay, Mehaffy & Weber, Beaumont, Tex., for McClelland.

Greg M. Dykeman, Strong, Pipkin, Nelson & Bissell, Beaumont, Tex., for MBank Beaumont.

Robert L. Lipstet, John C. Grazier, Lipstet, Singer & Hirsch, Houston, Tex., for Reliance Ins. & United Pacific.

## MEMORANDUM ORDER

COBB, District Judge.

On April 3, 1990, the United States Bankruptcy Court for the Eastern District of Texas entered a judgment and order in the case of *In Re: Troy Dodson Construction Co., Inc.,* finding that proceeds of settlement of state court litigation involving the debtor were part of the bankruptcy estate, to be distributed by the bankruptcy trustee. The Bankruptcy Court further found that United Pacific Insurance Co. (UPIC), Reliance Insurance Co. (RIC), and MBank Beaumont (MBank) did not have either valid protected liens on the proceeds of the state court judgment or any other allowable interest in the proceeds. UPIC and RIC appealed to this court, arguing a valid lien did in fact exist and they were entitled to collect the lien from the proceeds of the settlement. MBank cross-appealed, arguing it had a valid lien and was ahead of UPIC and RIC in priority.

The court has reviewed numerous motions and briefs and heard oral argument from the parties. The court now rules that the bankruptcy judge did not err in finding the proceeds were part of the bankruptcy estate. The bankruptcy court's judgment of April 3, 1990, is AFFIRMED.

## STATEMENT OF FACTS

The debtor involved in this case, Troy Dodson Construction Co., Inc. (Dodson), was a road construction company. Dodson entered a contract with the City of Beaumont (the City) to perform improvements on a Beaumont Road, Phelan Boulevard (the Phelan project). Following several disputes regarding the Phelan project, Dodson sued the City of Beaumont in Jefferson County District Court. Dodson alleged failure of the city to pay money owed on the Phelan project, and a number of torts, including tortious misstatements, business libel and slander, negligence, misfeasance, and breach of the duty of good faith and fair dealing. While the suit was pending, Dodson filed Chapter 11 Bankruptcy. The suit became an asset of the Chapter 11 Estate. Later, the Chapter 11 bankruptcy was converted to a Chapter 7 bankruptcy. The chapter 7 trustee negotiated a settlement of the lawsuit, and final judgment was entered in the state court November 20, 1987. The judgment was approved as to form and substance by counsel for the City and counsel for UPIC and RIC. MBank had intervened in the suit October 14, 1987, but that intervention was struck October 19, 1987, and that order was never appealed.

Proceeds paid to the trustee as a result of the settlement became part of the bankruptcy estate, and the trustee was ordered by the Bankruptcy Court to use those funds to pay unsecured creditors pursuant to the order of priorities.

## THE CLAIMS OF UPIC AND RIC

UPIC and RIC are corporate sureties who issue bonds and other undertakings. At Dodson's request, UPIC and RIC issued various performance and payment bonds on the Phelan project, on which UPIC was the surety and Dodson was the principal. These bonds named the City as obligee, and were for the benefit of the City and for mechanics and materialmen engaged on the Phelan project.

UPIC and RIC were joined by the City in Dodson's state suit as third party defendants; the City asserted a claim against the performance bond issued by UPIC. UPIC and RIC counterclaimed against the City seeking the balance due under the Phelan project contract. When the settlement judgment was entered in the state court, all these claims were dismissed with prejudice.

UPIC had made payments to mechanics and materialmen who worked on the Phelan project, in the amount of Two hundred and one thousand, one hundred seventy-nine and 04/100 Dollars ($201,179.04). Additionally, UPIC had made payments to mechanics and material on other projects for which Dodson had contracted, in the amount of One hundred ninety-one thousand, three hundred fifty-eight and 37/100 Dollars ($191,358.37). On March 15, 1982, Dodson executed an Agreement of Indemnity to UPIC and RIC, which granted UPIC and RIC a security interest in rights of Dodson arising from the Phelan project contract. UPIC and RIC filed a financing statement perfecting this security interest on December 14, 1984. UPIC and RIC now contend that the Bankruptcy Court erred in ruling the settlement proceeds were estate assets, and failing to award UPIC and RIC the total amount of their claim against Dodson, Three hundred ninety-two thousand, five hundred thirty-seven and 41/100 Dollars ($392,537.41), thereby failing to give UPIC and RIC priority based on their filing of the financing statements.

The Bankruptcy Court based its ruling on its finding that the settlement proceeds were awarded on the tort claims, and not on money due under the Phelan project contract. Simply put, the only issue before this court regarding UPIC and RIC's claim is whether the Bankruptcy Court erred in finding the state court proceeds were tort recovery, and not contract recovery, and therefore part of the estate. To resolve this issue, this court must answer two questions. The first question is whether the Bankruptcy Court correctly determined that the state court judgment was ambiguous, and outside evidence must be considered in interpreting it. This is a question of law, and is reviewed *de novo*. *Byram v. United States*, 705 F.2d 1418 (5th Cir.1983). The second question is whether the Bankruptcy Court correctly concluded from the outside evidence that the settlement proceeds were tort recovery. This is a question of fact, and is reviewed under a clearly erroneous standard. FED. R. BANKR. P. 8013.

### 1. Was the State Court Judgment Ambiguous?

The state court judgment has been examined by this court. The judgment refers to the compromise and settlement agreement reached by the parties. The only actual mention in the judgment of the basis of the settlement is:

> Whereas, plaintiff Troy Dodson Construction Company, Inc., alleges herein wrongful acts on the part of the City of Beaumont, et al, including misstatements, libel and slander, negligence, breach of the duty of good faith and fair dealing, misfeasance, and other similar allegations of wrongful acts....

It is not clear to this court that as a matter of law, this judgment could be said to be "not ambiguous." Reviewing the Bankruptcy Court's decision *de novo*, this court finds the judgment is ambiguous, and reference to extrinsic evidence is appropriate.

### 2. Were the Settlement Proceeds Tort Recovery?

The judgment entered relies upon the compromise and settlement agreement reached between the Bankruptcy Trustee and the City of Beaumont. Turning to that

agreement, this court finds it is similarly ambiguous. On one hand, the agreement claims to settle "all matters in controversy" between the parties. According to the third amended petition filed in state court, the matters in controversy include both contract claims, for unpaid work on the Phelan Project, and tort claims for libelous and slanderous statements made by employees of the City of Beaumont.

On the other hand, the settlement agreement discusses only tort claims. No mention is made in the agreement of any of the contract claims. The agreement only cites "statements ... alleged to have been untrue, libelous, and slanderous."

The Bankruptcy Court considered additional evidence of testimony from the Trustee regarding intent to settle based on the tort suit, and from a City employee regarding intent, and the nontestimony of UPIC and RIC's attorney, who was consulted during preparation of this agreement. This court, reviewing the Bankruptcy Court's conclusion that the proceeds were tort recovery, finds the Bankruptcy Court's decision is not clearly erroneous. Accordingly, the decision as to Appellants UPIC and RIC is AFFIRMED.

## THE CLAIMS OF MBANK BEAUMONT

MBank challenges the Bankruptcy Court's conclusion that MBank's security interest in Dodson's accounts receivable does not cover the settlement proceeds of Dodson's state court lawsuit. Only one question is presented: was that conclusion clearly erroneous?

MBank had intervened in the state court lawsuit, but its intervention was struck. MBank filed no appeal of the state court order striking its intervention. Additionally, MBank was in violation of the Bankruptcy Court's automatic stay when it filed this intervention. The Bankruptcy Court held that the state court's striking of MBank's intervention was *res judicata* as to MBank's interest in the settlement proceeds. Even if *res judicata* did not apply, the Bankruptcy Court held the settlement proceeds were not accounts receivable and therefore subject to MBank's security interest.

MBank relies on the allegation that the state court proceeds are contract recovery to support its claim. As previously discussed, it is not clearly erroneous for the Bankruptcy Court to conclude these funds are tort recovery. Accordingly, the decision of the Bankruptcy Court as to cross-appellant MBank is AFFIRMED.

## CONCLUSION

The decision of the Bankruptcy Court is in all things AFFIRMED. The settlement proceeds are properly characterized as tort recovery, and are part of the bankruptcy estate.